IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| KAY T. PENDER, | ) Civil Action No. 3:04-1571-MBS-JRM |
| ) | |
| Plaintiff, | ) |
| ) | |
| vs. | ) |
| ) | |
| SOUTH CAROLINA OFFICE OF THE STATE AUDITOR, | ) |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Kay T. Pender ("Pender"), filed this action in the Court of Common Pleas for Richland County, South Carolina. Defendant, the South Carolina Office of the State Auditor ("SAO"), removed the action to this court on May 18, 2004. Pender alleges claims for gender discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII")[1] and a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. Additionally, she alleges claims under the South Carolina Human Affairs Law ("SCHAL"), S.C. Code Ann. § 1-13-80. The SAO filed a motion for summary judgment on March 24, 2005. Pender filed a memorandum in opposition to summary judgment on May 11, 2005. In her memorandum, Pender states that she agrees to voluntarily dismiss her claims for age discrimination and a hostile work environment based on gender as she failed to exhaust her administrative remedies with respect to

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

those claims. Additionally, she concedes that she cannot maintain a claim under SCHAL. Plaintiff's Memorandum in Opposition to Summary Judgment, at 1-2. The SAO filed a reply on May 18, 2005.

## SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Pender began working at the SAO in 1985. At the time, her supervisor was State Auditor Ed Vaughn. Pender was hired as Director of Research and Training (the position was later renamed Director of Training and Quality Control). Pender remained in the position for eighteen years. See Pender Dep. 12, 19.

2. Pender's job duties consisted of scheduling and coordinating training; maintaining records for the audit staff's continuing professional education requirements; coordinating,

overseeing, and eventually conducting workpaper reviews to satisfy quality control standards; and maintaining the SAO audit manual in "current" status. The basic functions of the position did not change over the eighteen years, but Pender became more involved with quality review of audits, developing the program and checklists to review audits. Pender Dep. 12-13, 20-21 and Defendant's Ex. 1.

3. In 1998, Vaughn was succeeded by Tom Wagner ("Wagner"). Wagner Dep. 7-8.

4. State law provides that the State Auditor is responsible for conducting audits of state agencies, officers, programs, and private entities receiving appropriated funds, including Medicaid providers. See S.C. Code Ann. §§ 11-7-10 through 11-7-40. The SAO is required to conduct audits on a regular recurring basis and the staff is comprised primarily of auditors, audit supervisors, and audit managers. See Pender Dep. 19, 29.

5. The SAO consists of four sections: (1) Executive Management, (2) Administration, (3) State Audits, and (4) Medicaid Audits. The audit staff is assigned to either to State Audits or Medicaid Audits. The Director of State Audits is Rich Gilbert ("Gilbert") and the Director of Medicaid Audits is Jim McClam ("McClam"). Pender Dep. 26-32.

6. The Administrative section, headed by Ken Harrill ("Harrill"), consists of clerical employees and accounting technicians. This unit is responsible for matters of administration, including office budget, supplies, equipment, network, recruiting, salary, and human resources functions. Harrill Dep. 8-11, 14-15, and Plaintiff's Ex. 1.

7. Prior to August 2003, the Executive Management section consisted of the State Auditor (Wagner), the Executive Assistant to the State Auditor (Justine Parker), the Director of Research and Training (Pender), the director of Medicaid Audits (McClam), the Director

        of State Audits (Gilbert), and the Director of Administration (Harrill). Pender Dep. 35-36 and Defendant's Ex. 2.

8. At the time Wagner became State Auditor, the SAO had legislative authorization for 69 positions and funding for 66. Beginning in fiscal year 2002 (beginning July 1, 2001), however, funding for the SAO began to decline. The South Carolina General Assembly reduced the SAO's appropriation from 4.4 million dollars for FY 2001 (beginning July 1, 2000) to 3.9 million dollars for FY 2002. For FY 2003 (beginning July 1, 2002), the appropriation was reduced to 3.7 million. Staff size was reduced from 66 employees at the beginning of FY 2001 to 62 employees at the beginning of FY 2002, to 57 employees at the beginning of FY 2003, and to 52 employees at the beginning of FY 2004. Wagner Dep. 10-12 and Plaintiff's Ex. 1.

9. The FY 2004 appropriation reduced the SAO's budget from 3.7 million to 3.1 million. Wagner totaled the salaries of the 52 employees at the SAO as of May 2003 and realized that there was a shortfall of nearly $175,000 between the appropriation and what it would cost to meet the SAO's existing payroll for the year. See Wagner Dep 38-39; Harrill Dep. 17-19, 32-34, 41-44.

10. Wagner, after consulting with the State Office of Human Resources and Harrill, decided that a reduction in force ("RIF") was necessary to cope with the projected $175,000 deficit. He eliminated two positions in the Executive Management section, the Director of Training and Quality Control position held by Pender and the Executive Assistant to the State Auditor position held by Justine Parker ("Parker"). Wagner Dep. 41-45, 63; Harrill Dep. 27-31, 39.

11. On June 27, 2003, Pender was notified in writing that her job would be eliminated and her employment with the SAO would be terminated effective August 18, 2003. She was also notified about a voluntary separation program ("VSP"). Pender Dep. 39-40, 45, Defendant's Ex. 3 (RIF Notification Letter) and Ex. 4 (Notice of VSP).

12. Parker also had her position selected for RIF. Parker was offered the VSP and chose to accept it. See Wagner 48.

13. The VSP offered Pender a payment of $25,000 if she resigned, but the VSP would have also required her to sign an agreement stating that she would not return to state employment within two years (or prorate the amount received through the VSP), as well as a release of filing any claims in relation to the RIF. In addition, acceptance of the VSP would have rendered Pender ineligible for unemployment benefits. Pender Dep. 39-47, Defendant's Ex. 3 and 4; Wagner Dep. 47-48.

14. Pender considered her options, but decided against the VSP because she had only 18 years with the State Retirement System and needed to keep working for the State to attain sufficient years of service to qualify for full retirement benefits. Pender Dep. 46-47.

15. Pender declined participation in the VSP and was terminated via the RIF on August 18, 2003. She applied for and obtained employment with another state agency, the South Carolina Commission for the Blind. Pender began working as the Controller for the Commission for the Blind on August 19, 2003. Her starting salary was $60,000, which was $23,000 less per year than her salary at the SAO. Pender Dep. 13, 46-49.

16. On February 18, 2004, Pender filed a charge of discrimination with the South Carolina Human Affairs Commission and the United States Equal Employment Opportunity

Commission ("EEOC"), claiming that she had been terminated by the SAO based on her gender in violation of the SCHAL and Title VII. The EEOC issued a right to sue notice on March 31, 2004. Pender Dep. 52-55, and Defendant's Ex. 6.

## DISCUSSION

In her remaining claim, Pender alleges that the SAO violated her rights under Title VII by terminating her employment based on her gender. The SAO contends that Pender fails to establish her prima facie case.[2] Alternatively, the SAO argues that even if Pender could establish her prima facie case, it has articulated a legitimate, non-discriminatory reason for terminating her employment that she fails to show is pretextual.

A plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination.[3] To establish a prima facie case in a RIF case, the employee must establish: (1) she was protected under Title VII; (2) she was selected for discharge; "(3) [s]he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a lower level than that at which [s]he was performing." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir.1993)(age discrimination); Corti v. Storage Tech. Corp., 304 F.3d 336, 341, n. 6 (4th Cir.

---

[2] In its motion for summary judgment, the SAO references an amended complaint. No amended complaint has been filed in this action.

[3] Pender has not presented any direct evidence to support her claim that she was terminated, or that her job was eliminated, because she is female. See Pender Dep. 58-59, 70-71.

7

2002).[4]  McDonnell Douglas requires that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination.  Id. at 804; see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).

  A.  Prima Facie Case

    The SAO does not appear to dispute that Pender meets the first three prongs of her prima facie case, but argues that she fails to establish the fourth prong.  In order to establish the

---

[4] To establish a prima facie case of discriminatory discharge, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) that the position remained open to similarly qualified applicants after his dismissal (or that the position was filled by a similarly qualified applicant outside the protected class). See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998); Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir.1999).  Under this analysis, Pender fails to establish her prima facie case because no one replaced her, as her position was eliminated.  The fact that some of Pender's former duties were reassigned to other employees at the SAO after the RIF does not demonstrate that her position remained open or that she was "replaced."  Causey v. Balog, 162 F.3d 795, 802 (4th Cir.1998); Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996).  In RIF cases, however, "the fourth element may be satisfied by showing that persons outside the protected class were retained in the same position or that there was some other evidence indicating that the employer did not treat [the protected trait] neutrally in deciding to dismiss the plaintiff."  EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992)(internal quotations omitted); see also Causey, 162 F.3d at 802 ("Because Causey was terminated as part of a reduction in force, he could potentially satisfy the fourth element of a prima facie case by introducing other probative evidence that indicates the employer did not treat age and race neutrally when making its decision.").

8

fourth prong, Pender is "required to demonstrate that persons outside the protected class 'were retained in the same position or that there was some other evidence that the employer did not treat [gender] neutrally.'" Corti, 304 F.3d at 341, n. 6, citing Tuck v. Henkel Corp., 973 F.2d 371, 375, n. 3 (4th Cir. 1992) and Herold v. Hajoca Corp. 864 F.2d 317, 319 (4th Cir. 1988).

Pender fails to establish the fourth prong of her prima facie case. She argues that she meets the fourth prong because male Audit Managers were retained after the RIF. She admits these employees were retained in different positions than her, but argues that she was classified as an Audit Manager and the SAO retained several Audit Managers. The Audit Managers who were not RIF'd, however, all performed audits and supervised audits (see Pender Dep. 30-31, Wagner Dep. 23-28, 51-53) and thus were not similarly-situated to Pender. See Wheatley v. Wicomico County, 390 F.3d 328 (4th Cir. 2004)(fact that plaintiff's job title was "department head" did not establish that her job was equal to that of males who held the same title and who, plaintiff claimed, were paid more than she was for performing equal work); Pitasi v. Gartner Group, Inc., 184 F.3d 709, 717 (7th Cir. 1999)(mere fact that RIF'd plaintiff was classified as a "research analyst" like 205 other employees who were retained was not sufficient for purpose of establishing fourth prong of prima facie case that he was similarly-situated to the retained employees).

Pender also argues that she met the fourth prong because she was selected from a larger group of candidates (a group consisting of all employees of the SAO) and that the RIF produced a residual work force containing unprotected employees who were performing at a lower level than Pender. Specifically, Pender argues that Wagner admitted that he had auditors who were assigned work below their level and that they were thus performing below their grade level. Wagner Dep.

9

54-55. The group Pender was selected from, however, was the Executive Management section, not all of the SAO. See Wagner Dep, Plaintiff's Ex. 3 (memo from State Budget and Control Board to Harrill regarding the RIF plan); Harrill Dep. 37-39.

Pender argues that gender was not treated neutrally because, after Wagner became State Auditor, she did not fit in anywhere, she was "out of the loop", and she no longer was sent to regional and national meetings. This appears to be a claim of disparate treatment that is not before the court. Further, Pender has not shown that this was an adverse job action or identified anyone who was similarly situated to her who received better treatment.

Pender also argues that she met the fourth prong because the only employees in the Executive Management section who were subjected to the RIF were female. A sample of six employees is too small for reliable statistical analysis. Vaughan v. MetraHealth Cos., Inc., 145 F.3d 197, 203-204 (4th Cir. 1998), abrogated on other grounds, Reeves, supra. Additionally, Pender has not offered expert testimony concerning any statistics. See, e.g., Carter v. Ball, 33 F.3d 450, 457 (4th Cir. 1994) ("[I]f a plaintiff offers a statistical comparison without expert testimony as to methodology or relevance to plaintiff's claim, a judge may be justified in excluding the evidence.").

      B.     <u>Legitimate, Non-discriminatory Reason, Pretext</u>

Even if Pender could establish her prima facie case, the SAO has articulated a legitimate, non-discriminatory reason for its actions, that Pender was terminated because of budget cuts. Wagner eliminated the positions of Director of Training and Quality Control and Executive Assistant to the State Auditor because elimination of these positions would achieve the required monetary savings with the least adverse impact on the SAO's ability to carry out its statutory

mandate to conduct audits. See Wagner Dep. 41-45, 63; Harrill Dep. 27-31, 39. Harrill stated that "[t]he primary concern was a reduction that would have the least negative effect on our ability to conduct audits and any reduction in force in the audit programs would have resulted in fewer auditors." Harrill Dep. 39.

Pender fails to show that the SAO's legitimate, non-discriminatory reason for terminating her employment is pretextual or that discrimination was the real reason for its actions. She contends that her job functions were no less essential to the SAO or its audit functions than others in the Executive Management or other area of the SAO because she helped with continuing education and checked audits performed by the SAO to ensure compliance with relevant accounting standards. Pender argues that her position was important because the functions of her position were redistributed to Gilbert and McClam. She has not, however, shown that her job function was more relevant than that of those of positions that were not RIF'd. Employment discrimination laws were "not designed to prevent leaders in the public sector from achieving the mix of employee expertise that will best fulfill an agency's mission." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004).

Pender also contends that the SAO instituted the RIF over other means to meet budget (such as attrition, reductions in pay, or mandatory furloughs) and failed to look at eliminating employees at her same job classification or moving her into a lower position at the SAO. An employer's decision to eliminate positions rather than cut other parts of its budget is not proof of pretext, so long as the action is not discriminatory. Beaver v. Rayonier, Inc., 200 F.3d 723, 728 (11th Cir.1999)("[Plaintiff's] real beef seems to be that [the employer] chose to cut jobs to reduce

11

costs instead of cutting out bonuses and raises. However, the employer is free to choose whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions.").

Additionally, Pender also argues that it is "confusing" that the SAO did not look to the Administrative section for its cuts. Wagner, however, stated that it was his assessment that Harrill's position was essential to the SAO. Wagner Dep. 3-64. The four word processors typed all the audit reports generated by the SAO, and Harrill stated that the salaries of all employees serving under him would have had to be eliminated to achieve the $175,000 shortfall. Harrill Dep. 25-26, 44-45. Also, Pender argues that the budget cuts were "not as grave as the Defendant might [sic] claim" because the SAO was not subjected to a mid-year budget cut, the SAO hired additional employees (entry level auditors) later in the year, and staff members received raises. Wagner, however, testified that he met budget in part due to voluntary furloughs. Wagner Dep. 50. He also stated that he never considered bumping an Audit Manager or Auditor in Medicaid Audits or State Audits and replacing that person with Pender because she had no recent audit experience (she had not conducted audits in over 25 years) and had not supervised or conducted any audits during her 18 years with the SAO.[5] Wagner Dep. 51-53.

Pender fails to show pretext because all her arguments involve second-guessing the SAO's management decisions and do not support an inference that gender motivated the decision to abolish her position. Merely questioning the merits of the SAO's decision does not show that the articulated reason for terminating Pender was false or was not the real reason for her discharge. See, e.g., Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000); Kun v. Berkeley County

---

[5] Wagner testified that he did not hire auditors above the entry level salary (which at $30,900 was significantly lower than Pender's salary). Wagner Dep. 37.

12

Gov't, 214 F.Supp.2d 559, 566 (D.S.C. 2001), aff'd, 32 Fed. Appx. 689, 2002 WL 570670 (4th Cir. Apr. 17, 2002). Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248 (4th Cir. 2005), citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998); see also Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000)("The decision to discharge [plaintiff] and retain [other employees] is the kind of business decision that we are reluctant to second-guess.").

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 12) be granted.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

October 18, 2005
Columbia, South Carolina